IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WHITE PINE INSURANCE COMPANY** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 17-2789 |
| v. | : | |
| | : | |
| **BALA INN, INC.** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                    MARCH 2, 2018

# MEMORANDUM OPINION

## INTRODUCTION

This is a declaratory judgment action brought by Plaintiff White Pine Insurance Company ("White Pine"), an insurer, under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, to determine the rights and duties to defend and/or indemnify, if any, it owed Defendant Bala Inn, Inc., ("Bala"), the insured, in an underlying state court action. Before this Court are fully briefed cross-motions for summary judgment filed by the parties, ripe for disposition, in which each seeks a declaration in its favor. For the reasons stated herein, White Pine's motion is granted, and Bala's motion is denied. Accordingly, summary judgment is entered in favor of White Pine.

## BACKGROUND[1]

This federal matter commenced on June 21, 2017, when White Pine filed a complaint

---

[1]       In reviewing a motion for summary judgment, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Publ. Schs.*, 486 F.3d 791, 974 (3d Cir. 2007). Because an insurer's duty to defend an action against its insured is initially determined on the basis of the allegations contained in the underlying complaint against the insured, most of the facts set forth in this section are drawn from the underlying state court complaint filed against Bala. *See State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 108 n.3 (3d Cir. 2009) (citing *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290-92 (Pa. 2007)). However, some facts in this section are

against Bala seeking a determination whether it has to defend and/or indemnify Bala in an underlying state court action (the "State Court Litigation") brought by Vincent Smithwick ("Smithwick"), [ECF 1]. The State Court Litigation was filed on October 31, 2016, in the Philadelphia Court of Common Pleas, and is captioned *Smithwick v. Bala Inn*, Oct. Term 2016, Civ. A. No. 4293. Therein, Smithwick averred claims against Bala for negligence, dram shop liability, public nuisance, and negligent infliction of emotional distress, as well as compensatory and punitive damages for the injuries suffered. By letter dated December 20, 2016, White Pine disclaimed coverage on the basis of the Policy's Assault and Battery and Liquor Liability exclusions. On December 27, 2016, Smithwick filed an amended complaint (the "State Court Complaint") in which he removed the claim for dram shop liability, and reasserted the claims for negligence and public nuisance. The State Court Complaint alleged the following material facts:

- that Bala is a licensed alcoholic beverage server and entertainment nightclub located at 5004 City Avenue, Philadelphia, Pennsylvania. (State Court Complaint at ¶¶2, 4, 23).

- that on April 7, 2016, while in Bala's parking lot, Smithwick and another person were shot by an unknown person. (*Id*. at ¶11);

- that Bala was negligent as "alcohol servers." (*Id*. at ¶13);

- that the injuries sustained by Smithwick "were negligently caused by [Bala's] actions or inactions as set forth herein." (*Id*. at ¶16).

The State Court Complaint further lists the following acts and/or omissions by Bala that allegedly caused Smithwick's injuries:

> (a) Creating a dangerous condition upon its land and the immediately surrounding area;
>
> (b) Failing to have in place reasonable security measures;

---

drawn from the parties' respective motions and responses thereto. While most of the facts material to the parties' cross-motions are undisputed, where disputed, this Court has construed the facts in favor of Bala.

(c) Failing to use reasonable care to provide reasonable security to Plaintiff, who was a business invitee, and/or who was foreseeably endangered;

(d) Failing to take reasonable, affirmative and precautionary steps and measures to prevent injury to the Plaintiff under the circumstances;

(e) Failing to hire adequate personnel and/or failing to adequately train personnel in order to provide a reasonable security presence and/or crowd control at the subject business and the immediate vicinity;

(f) Failing to adequately staff the premises with knowledge of the propensity for fights and/or criminal attacks to occur on the premises and in the parking lot or in the immediate vicinity, especially at or around the late night and early morning hours;

(g) Failing to intervene in the incident causing injury to the Plaintiff after having notice of its occurrence;

(h) Failing to take reasonable precautions to protect against the harmful acts of persons on their property or the immediate vicinity which were, or should have been, reasonably anticipated and foreseen;

(i) Failing to discharge an assumed and/or contractual duty to provide for security and safety to its business invitees and others at the premises, including the parking lot and in the immediate surrounding vicinity;

(j) Creating and/or promoting a dangerous condition on the property and the immediate vicinity of the property by permitting dangerous persons to remain on the property;

(k) Endangering plaintiff and the general public by failing to provide reasonable protection to plaintiffs and the public against foreseeable criminal activity;

(l) Using and possessing the sidewalk and surrounding areas immediately adjacent to Bala Inn and/or Bala Inn Sports Bar & Grill for a commercial and business purpose in an unreasonable and dangerous manner without providing adequate security management so as to provide reasonable

3

protection to plaintiffs and the public against foreseeable criminal activity;

(m) Violating the duties imposed upon them as land possessors pursuant to the Restatement of Torts, Second §§314A, 315, 344, & 371, as adopted in Pennsylvania;

(n) Failing to inquire of the criminal history and suitability on or immediately surrounding the property prior to or after undertaking and operating a nightclub at the location;

(o) Permitting patrons and employees to create a public and/or private nuisance, as described more particularly herein;

(p) Negligently and/or recklessly permitting illegal loitering by dangerous persons in crowds at/near the subject location;

(q) Disturbing the peace and quiet of the surrounding neighborhood which endangered the health and safety of Plaintiff;

(r) Creating a public nuisance in violation of applicable law, including both common law and the requirements imposed by 47 P.S. §6-611 and 47 P.S. §4-470(a)(4) as liquor licensees;

(s) Unreasonably interfering with Plaintiffs' right to safety;

(t) Failing to properly manage the area at/near the subject location which was open to members of the public, and which was occupied by plaintiff and other business invitees, in order to fully apprise itself of the dangers posed to individuals, including the plaintiff;

(u) Failing to remove and/or notify police to remove dangerous persons, from the subject location when defendants knew or should have known of their existence and violent behaviors;

(v) Negligently leasing the property to the other defendants;

(w) Negligently failing to arrange for reasonable security and/or police protection (either on duty or off duty officers) for patrons, including plaintiff;

(x) Negligence in the "bouncing" and/or policing of its premises in violation of the standard of care required of and/or assumed by these defendants in the hospitality and nightclub/bar industry;

(y) Failing to timely notify the proper authorities of the incident causing injuries to plaintiff;

(z) Violating defendants' own security policies and procedures;

(aa) Creating or permitting a "nuisance bar" upon its premises; and

(bb) Negligently and/or recklessly violating the duties imposed by 47 P.S. §6-611 and 47 P.S. §4-470(a)(4).

(*Id*. at ¶22).

As the party defendant in the State Court Litigation, Bala sought a defense and indemnification from White Pine pursuant to a commercial general liability policy (the "Policy") White Pine had issued to Bala covering the period of December 5, 2015, to December 5, 2016. As noted, White Pine denied coverage based on two of the Policy's exclusions; *i.e.*, the Assault and Battery exclusion and the Liquor Liability exclusion. Specifically, the "Assault, Battery, or Assault and Battery Exclusion" (the "Assault and Battery Exclusion") provides, in part:

> This insurance does not apply to "bodily injury" . . . arising out of or resulting from:
>
> 1. "Assault", "Battery", or "Assault and Battery" committed by any person;
>
> 2. The failure to suppress or prevent "Assault", "Battery", or "Assault and Battery" by any person;
>
> 3. The failure to provide an environment safe from "Assault", "Battery", or "Assault and Battery":
>
> 4. The failure to warn of the dangers of the environment which could contribute to "Assault", "Battery", or "Assault and Battery";

> 5. "Assault", "Battery", or "Assault and Battery" arising out of the negligent hiring, supervision, or training of any person;
>
> 6. The use of any force to protect persons or property whether or not the "bodily injury" or "property damage" or "personal and advertising injury" was intended from the standpoint of the insured or committed by or at the direction of the insured.

(Policy, ECF 11 at p. 112).

The exclusion provides the following relevant definitions:

> "Assault" means:
>
>> a. an act creating an apprehension in another of immediate harmful or offensive contact, or
>>
>> b. an attempt to commit a "Battery".
>
> "Battery" means an act which brings about harmful or offensive contact to another or anything connected to another.
>
> "Assault and Battery" means the combination of an "Assault" and a "Battery."

(*Id.*).[2]

By letter dated February 23, 2017, White Pine again disclaimed coverage on the basis of the Assault and Battery exclusion.

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 governs the summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine"

---

[2] Because this Court concludes that the Assault and Battery Exclusion excludes all of the claims asserted in the State Court Complaint, the Liquor Liability exclusion is not set forth or addressed herein.

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).[3]

The standards to be applied in deciding cross-motions for summary judgment are the same as those applied when only one party has filed a summary judgment motion. *Cincinnati Ins. Co. v. Devon Intern., Inc.,* 924 F. Supp. 2d 587, 589 n.3 (E.D. Pa. 2013). "When confronted with cross-motions for summary judgment, the 'court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Anderson v. Franklin Institute*, 185 F. Supp. 3d 628, 635 (E.D. Pa. 2016) (quotations omitted).

Here, though the parties' underlying cross-motions are for summary judgment with respect to their dispute whether White Pine has a duty to defend and/or indemnify, they each rely upon their respective legal interpretations of the underlying commercial insurance policy and the

---

[3] Generally, Rule 56(c) provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id*. at 322. After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Rule 56(c)(1)(A-B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*.

allegations in the underlying State Court Complaint, rather than on an analysis of facts or evidence. As set forth more fully below, whether an insurer owes a duty to defend an insured in litigation brought against the insured is initially determined from the allegations contained in the underlying complaint against the insured and the language of the insurance policy at issue. *See Mehlman*, 589 F.3d at 110 (citing *Donegal*, 938 A.2d at 290)). As such, neither the parties' respective arguments with respect to the duty to defend nor this Court's opinion with respect to the duty to defend is reliant upon any disputed facts or evidence.

**DISCUSSION**

The issue to be decided is whether White Pine owes a duty to defend and/or indemnify Bala in the State Court Litigation. In its motion for summary judgment, White Pine argues that it does not owe such a duty, while Bala, in its cross-motion for summary judgment, argues that White Pine owes it a duty to defend and indemnify in the State Court Litigation.[4] Because the cross-motions for summary judgment concern identical issues and there are no disputes of material fact, this Court will concurrently address and adjudicate both motions.

Under Pennsylvania law,[5] an insurer's duty to defend is broader than its duty to indemnify. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005). However, "there is no duty to indemnify if there is no duty to defend." *Id*. To determine whether White Pine owes a duty to defend Bala in the underlying State Court Litigation, the allegations in the State

---

[4] Bala's motion also seeks dismissal of this declaratory judgment action on two other bases: White Pine's alleged failure to disclaim coverage for negligence and White Pine's failure to join an indispensable party. These arguments are addressed separately below.

[5] This matter comes before this Court on diversity jurisdiction, and all parties agree that Pennsylvania substantive law governs the action. Accordingly, this Court will treat the decisions of the Pennsylvania Supreme Court as binding precedent and will treat the decisions of the Pennsylvania Superior Court as persuasive precedent. *State Farm Fire & Cas. Co. v. Estate of Mehlman,* 589 F.3d 105, 108 n. 2 (3d Cir. 2009) (citing *Jewelcor Inc. v. Karfunkel,* 517 F.3d 672, 676 n. 4 (3d Cir. 2008)).

Court Complaint and the language of the commercial insurance policy issued to Bala must be examined and compared. That is:

> an insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings . . . . In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay [the] resulting judgment . . . . [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation.

*Donegal*, 938 A.2d at 290 (citation omitted).

To determine whether a claim is covered by an insurance policy, the court must compare the four corners of the policy to the four corners of the underlying complaint. *Id*. If the underlying state court complaint alleges an injury "which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover." *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 985 (Pa. Super. Ct. 1986). "To prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff frames the request for relief." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). The mere allegation of "negligence" in a complaint is insufficient to trigger an insurer's duty to defend. *See id.* ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint."); *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 605 (Pa. Super. Ct. 1997) ("[I]n focusing attention upon the *cause of action* pled, [claimants] run afoul of our case law, which dictates that the *factual averments* contained in a complaint determine whether an insurer must defend.") (emphasis in original). The duty to defend is properly denied where

9

the allegations fall within a clear and unambiguous exclusion of coverage. *Harrison v. Aetna Life & Casualty*, 473 A.2d 636, 636 (Pa. Super. Ct. 1984).

Here, White Pine relies on the Assault and Battery and Liquor Liability exclusions in the Policy to argue that it does not owe a duty to defend Bala because the facts alleged and the claims pled in the State Court Complaint fall within the exclusions. Bala disagrees and argues that at least some of the claims and/or theories of liability alleged in the underlying State Court Complaint, such as negligence, fall outside of the exclusions and within the four corners of the policy's scope of coverage. In addressing insurance disputes under Pennsylvania law, the Court of Appeals for the Third Circuit outlined the approach that Pennsylvania district courts should follow when reviewing insurance contract provisions and exclusions, such as those at issue here, *to wit*:

> It is the function of the court to interpret insurance contracts under Pennsylvania law. The court's primary consideration in performing this function is to ascertain the intent of the parties as manifested by the language of the written instrument. The policy must be read as a whole and construed in accordance with the plain meaning of terms. Words of common usage must be construed in their natural, plain, and ordinary sense, with a court free to consult a dictionary to inform its understanding of terms. Where the language of an insurance policy is clear and unambiguous, a court must enforce that language. Furthermore, if possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions. However, if the contract's terms are reasonably susceptible to more than one interpretation, then they must be regarded as ambiguous. Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control. Pennsylvania courts have applied this rule liberally.

*Amer. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320-21 (3d Cir. 2011) (citations and quotations omitted); *see also Donegal,* 938 A.2d at 290–91; *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). Where "an insurer relies on a policy exclusion as the

basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999).

The parties' coverage dispute is centered primarily on the application of the Policy's Assault and Battery Exclusion.[6] White Pine argues that although the underlying State Court Complaint speaks in terms of negligence, the bodily injury for which Smithwick seeks to recover was caused by or the result of a shooting in Bala's parking lot by an unknown individual (an assault and battery) and is, therefore, excluded by the clear terms of the Assault and Battery Exclusion. Specifically, White Pine argues that the operative provision of the Assault and Battery Exclusion, as written, excludes bodily injury arising out of any act or omission committed by any insured or agent of the insured in connection with the prevention or suppression of (or failure to prevent or suppress) an assault or battery. In response to White Pine's argument in this regard, Bala argues only that the underlying State Court Complaint asserts claims for negligence which are covered.

At the outset, this Court finds that the Assault and Battery exclusion, set forth in its entirety above, is unambiguous.[7] It excludes coverage not only for claims arising directly out of an assault and/or battery, but also claims premised upon an insured's "failure to suppress or prevent" such an assault or battery or "failure to provide an environment safe from" an assault or battery. It also expressly excludes coverage for an action alleging an assault and battery "arising out of the negligent hiring, supervision, or training of any person." *Cf., First Mercury Ins. Co. v.*

---

[6] White Pine has conceded that the claim for damages set forth in the underlying State Court Complaint is a "bodily injury" pursuant to the terms of the Policy and that the underlying State Court Complaint is a "suit." [*See* ECF 11 at p. 8]. White Pine argues only that coverage is expressly excluded by the two afore-quoted exclusions.

[7] Notably, Bala does not argue that the Assault and Battery exclusion is ambiguous.

11

*Rossi*, 2011 WL 1235092, at *5 (E.D. Pa. Apr. 1, 2011) (finding similar assault and battery exclusion unambiguous); *Unionamerica Ins. Co. v. Lim*, 2000 WL 1056450, at *2 (E.D. Pa. Aug. 1, 2000) (same); *Certain Underwriters at Lloyd's, London v. Brownie's Plymouth, Inc.*, 24 F. Supp.2d 403, 405 (E.D. Pa. 1998) (same); *River Thames Ins. Co. v. 5329 West, Inc.*, 1996 WL 18812, at *1 (E.D. Pa. Jan. 18, 1996) (same); *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F. Supp. 1090 (E.D. Pa. 1994), *aff'd*, 37 F.3d 1485 (3d Cir. 1994).

Having made this determination of unambiguity, consistent with the principles outlined above, this Court must now compare the allegations within the four corners of the State Court Complaint to the language of the Policy and the cited exclusions, to determine whether the underlying allegations state a claim that could potentially fall within the scope of the insurance coverage. *Donegal*, 938 A.2d at 290. As set forth above, the State Court Complaint filed by Smithwick artfully does not specifically assert that his injury was the result of an assault and battery. The State Court Complaint does, however, assert that Smithwick was "shot by an unknown person" while he was in Bala's rear parking lot. (State Court Complaint ¶11). It further alleges that Smithwick's injuries "were negligently caused by [Bala's] actions and/or inactions as set forth herein," (*id*. ¶16), and lists approximately twenty-eight ways in which Bala was negligent and/or failed to take measures to prevent Smithwick's injury. (*Id*. ¶22). The references to and characterization of the claims as negligence, however, do not render the Assault and Battery exclusion inapplicable. It is the factual allegations that create a duty to defend, not the recitation of any magical language related to concepts of negligence. *See Certain Underwriters at Lloyd's v. Cho*, 917 F. Supp. 353, 354 (E.D. Pa. 1996) (holding that regardless of actual language of allegations in underlying complaint, negligence claims were excluded from insurance coverage if actual cause of harm stemmed from assault and battery). Regardless, all of

Smithwick's allegations against Bala go to Bala's acts or omissions in failing to prevent or suppress the shooting (an assault) that occurred, allegations that clearly fall within the portion of the Assault and Battery exclusion which expressly precludes coverage for the insureds' alleged "failure to suppress or prevent" an assault and/or "failure to provide an environment safe from" assault. Applying the Assault and Battery Exclusion to the facts averred in the underlying State Court Litigation, this Court finds that the exclusion applies and precludes coverage for the underlying suit. Accordingly, White Pine does not have a duty to defend or indemnify Bala in the underlying State Court Litigation.

Numerous courts applying Pennsylvania law have similarly held that an insurer does not have a duty to defend an insured based on an assault and battery exclusion even if the third-party complaint included claims of negligence in failing to prevent the underlying assault and battery.[8] For example, in *Alea London Limited v. 65 Bog Inc.*, 2006 WL 1030247 (E.D. Pa. Apr. 19, 2006), the district court granted an insurer's motion for judgment on the pleadings in a declaratory judgment action because it found that the relevant policy's assault and battery exclusion unambiguously precluded coverage in the underlying tort lawsuit. In the underlying suit, which related to a shooting by an assailant at a tavern, the insured tavern owner was accused of many forms of negligence: failure to properly supervise the premises; failure to supervise or

---

[8] *See, e.g., Markel Int'l Ins. Co. v. 2421 Salam, Inc.*, 2009 WL 1220577, at *7 (E.D. Pa. Mar. 31, 2009) (collecting cases); *Essex Ins. Co. v. Quick Stop mart, Inc.*, 2009 700879, at *9 (E.D. Pa. Mar. 16, 2009); *Alea London Ltd. v. 65 Bog Inc.*, 2006 WL 1030247 (E.D. Pa. Apr. 19, 2006); *Market Int'l Ins. Co. v. Banks Mgmt. Co.*, 2005 WL 1607396 (E.D. Pa. July 6, 2005); *Cho*, 917 F. Supp. at 354-55 ("That [defendant] may have been negligent in not preventing the injuries does not take this case out of the assault and battery exclusion."); *Terra Nova Ins. Co. v. Thee Kandy Store, Inc.*, 679 F. Supp. 476, 478 (E.D. Pa. 1988) ("Although [the plaintiff] claims that the defendants in his Common Pleas action were negligent in preventing the assault and battery, this allegation is not sufficient to avoid a properly executed assault and battery exclusion. Regardless of the language of the allegations, the original cause of the harm arose from an alleged assault and battery."); *St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's Inc.*, 582 F. Supp. 865, 868 (E.D. Pa. 1984).

adequately regulate the conduct of individuals present; failure to warn of the presence of dangerous individuals; failure to post sufficient security personnel; failure to enforce policies regarding the physical removal of dangerous individuals; and failure to provide adequate security. *Id*. at *1 n. 1. The court found that these allegations claimed acts or omissions by the insured tavern owner in failing to prevent or suppress the assault that formed the basis of the underlying lawsuit. *Id*. at *6. The court concluded that policy language excluding "any act or omission in connection with prevention or suppression of an assault and battery, committed by any insured or an employee or agent of the insured" covered allegations that the insured was negligent for failing to suppress or prevent the assault. *Id*. The court thus ruled that the insurer had no duty to defend or indemnify the insured in the underlying action, and granted judgment for the insurer. *Id*.

It is equally clear here that Smithwick's allegations of negligent conduct, essentially that Bala failed to take various steps to prevent the shooting, fit squarely within the Assault and Battery Exclusion. Reiterating, the Assault and Battery Exclusion specifically excludes claims arising from a failure to prevent or suppress an assault or battery, which is precisely what is alleged in the State Court Complaint. All of the Smithwick allegations involve Bala's negligence, recklessness, or carelessness in failing to prevent the shooting (an assault), conduct that is clearly excluded by the unambiguous language of the Assault and Battery Exclusion.[9] Therefore, White Pine does not owe a duty to defend or indemnify Bala for the State Court Litigation.

---

[9] In its motion for summary judgment, White Pine also argues that it has no duty to defend and/or indemnify Bala because some of the claims asserted in the underlying State Court Litigation also fell within the Policy's Liquor Liability Exclusion. Because this Court has concluded that all of the claims asserted in the underlying State Court Litigation fall within the Assault and Battery Exclusion, it need not determine whether any other exclusions apply.

In its motion for summary judgment, Bala argues that White Pine's declaratory judgment complaint should be dismissed because White Pine has failed to allege a disclaimer of coverage for negligence in its underlying declaratory judgment complaint. Bala is mistaken. Notably, Bala cites no legal support for this contention or its argument that because White Pine has not alleged such a disclaimer of coverage for negligence, there is no actual or justiciable controversy. Further, a review of the underlying declaratory judgment complaint reveals that White Pine alleges that it disclaimed coverage for the State Court Litigation, and attaches its written disclaimer. (*See* ECF 1, Compl. at ¶15). As such, Bala's argument is without merit.

Bala also argues that White Pine's declaratory judgment complaint should be dismissed because White Pine failed to join an indispensable party (Smithwick, the plaintiff in the underlying State Court Litigation) as required by Federal Rule of Civil Procedure 19. In response, White Pine contends that Smithwick is not an indispensable party and relies primarily on the Third Circuit Court of Appeals' decision in *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005). In *Treesdale*, the Third Circuit held that under Rule 19 "a party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action." *Id.* at 230. The court, therefore, concluded that the attempted interveners – third parties injured or killed by the insured's products – were not entitled to intervene, and were also not necessary parties under Rule 19 in the insurance coverage dispute between that insured and its insurer. *Id.* at 218–219, 230.

Rule 19(a)(1) provides that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

>       (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>       (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
>       (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

The court must first determine whether such parties are "necessary" under Rule 19(a), and, if they are, but joinder is not "feasible" because joining them would defeat diversity, it must next ask if the parties are "indispensable" under Rule 19(b). *Gen. Refractories Co. v. First State Ins. Co.,* 500 F.3d 306, 312 (3d Cir. 2007). A court need only proceed to a Rule 19(b) analysis if it first determines that joinder is compulsory under Rule 19(a). *See id.* at 313 (explaining that, prior to a discretionary determination under Rule 19(b) that joinder of an indispensable party is "not feasible," the court must hold that joinder is compulsory under Rule 19(a)).

Under Rule 19(a)(1)(A), the inquiry is whether complete relief may be accorded to parties named in the action in the absence of parties not named. *Id.* In other words, a court looks to whether it can grant complete relief to the persons already parties to the action. The effect that the court's decision has on absent parties is immaterial. *See Gen. Refractories Co.,* 500 F.3d at 313 (citing *Angst v. Royal Maccabees Life Ins. Co.,* 77 F.3d 701, 705 (3d Cir.1996)).

Here, Smithwick's absence from this declaratory judgment action does not prevent this Court from granting relief to the parties. White Pine filed this action seeking a declaration from this Court regarding the scope of its coverage and duty to defend and indemnify Bala. As such, White Pine's declaratory complaint seeks an interpretation of the Policy as it relates to the

factual allegations in Smithwick's underlying State Court Complaint. Clearly, White Pine did not bring any allegations against Smithwick. Therefore, the only parties necessary to this dispute are White Pine and Bala. *See, e.g., Nat'l Cas. Co. v. Young*, 2008 WL 4414719, at *1 (E.D.Pa. Sept. 23, 2008) (reasoning that third-party plaintiff in an underlying action was not a "necessary" party because the declaratory judgment complaint did not state any allegations or claims against third-party plaintiff, and the only parties involved in the dispute were the insurer and its insured). This Court may grant complete relief to the parties absent Smithwick.

In addition, under Rule 19(a)(1)(B), a party must be joined if:

> that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(b). The term "interest" in this context means a legally protected interest, not merely a financial interest in the action. *See, e.g., Treesdale,* 419 F.3d at 230 ("[A] party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action.").

Though Smithwick may have a financial interest, he does not have a legal interest relating to the subject of the declaratory action. Smithwick's financial interest is insufficient to make him a necessary party to this action under Rule 19(a). Thus, having found that Smithwick is not a necessary party under Rule 19(a), this Court also concludes that he is not an indispensable party under Rule 19(b). *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 404 (3d Cir. 1993) (holding that if an absent party is not "necessary" under Rule

17

19(a), the court need not decide or reach whether the party is "indispensable" pursuant to Rule 19(b)). Bala's motion for summary judgment that relates to White Pine's failure to join Smithwick to its declaratory judgment action is denied, as lacking merit.

**CONCLUSION**

For the reasons stated herein, White Pine's motion for summary judgment is granted and Bala's motion for summary judgment is denied. Accordingly, judgment is entered in favor of White Pine. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.